UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

GREG JAMES VENTURES LLC,                                                           No. 07-11434

                               Debtor(s).
_____/

Memorandum re Plan Confirmation
_____

I. Introduction

       Debtor Greg James Ventures LLC operates Cadillac, Chevrolet, Hyundai, Hummer and Saab car dealerships at a single location in San Rafael, California. It acquired the dealerships in 2006 from the prior owner using financing from Bank of America. It experienced financial difficulties from the start, resulting in its Chapter 11 filing on November 5, 2007, just a little over a year after purchasing the dealerships.

       Since the filing, the debtor has taken drastic steps to reduce its overhead and make its business profitable. It has also paid the Bank over $3 million, reducing the amount owing to the Bank from about $12 million to about $9 million. It has proposed a plan, built around new exit financing, which cancels existing equity interests and proposes to pay all creditors, including the Bank, in full with 5% interest over 10 years. The plan is supported by the Creditors Committee and all creditors and interested parties except the Bank. For reasons which the court finds without merit, the Bank opposes confirmation.

       The court has no difficulty finding that the plan meets the requirements of § 1129(a) of the Bankruptcy Code. The Bank's objections go primarily to factual and discretionary matters, not technical defects. The court will attempt to address each of the issues raised by the Bank.

1

## II. Ten-Year Payout

Since the plan is proposed over the Bank's objection, § 1129(b)(1) of the Code provides that it can be confirmed only if it is "fair and equitable" as to the Bank. The Bank's first argument is that a ten-year repayment period is unfair. The court finds no merit in this argument. Congress has provided that most small consumer reorganizations in Chapter 13 are to provide payment to creditors over a period of five years. A ten-year period of repayment for a Chapter 11 plan in a much larger case, when measured by this standard, is entirely fair and reasonable. This is especially so since the debt is to be repaid with interest, the plan is fully supported by the Creditors Committee, and the majority of the Banks' claim will be paid in the first few years.[1]

## III. Value of Franchises

The plan ascribes a value of $250,000.00 to the franchises over and above the value of the physical assets. This valuation of the debtor's goodwill or "blue sky" is higher than the court would fix if asked to do so, since the credible testimony of a broker hired early in the case was that he diligently and competently sought a buyer for the dealerships and was not able to generate a single offer or even any interest. If the debtor's assets are ever to have any "blue sky" value, it will only be if the debtor's plan is successful and General Motors is able to survive the current economic situation. For now, the evidence before the court compels the conclusion that the debtor's "blue sky" valuation of $250,000.00 is more than reasonable.

## IV. Retained Financing

The Bank's weakest argument is that the plan is unfair because it calls for the debtor to "sit" on several million dollars in new financing instead of immediately disbursing the funds to creditors. This is an

---

[1] In response to an inquiry by the court, the debtor has offered to amend its plan to provide that any of the Bank's vehicles not liquidated by September 30, 2009, will be turned over to the Bank in return for wholesale value credit. This amendment is probably not necessary given the debtors more than satisfactory record of liquidating vehicles secured by the Bank and paying the proceeds to the Bank while the case has been pending, but meets any concerns the court might have about prompt liquidation of inventory subject to the Bank's security interest. This provision shall be made a part of the plan either by amendment or inclusion in the order confirming the plan, with a slight modification: the credit shall be for the actual amount realized by the Bank, as long as the Bank has acted in a commercially reasonable manner.

2

especially disingenuous argument, as § 1129(a)(11) of the Code requires the debtor to show that confirmation is not likely to be followed by the need for further reorganization and the Bank knows full well that the debtor needs to demonstrate adequate cash reserves and working capital in order to meet this requirement.[2]

V. Supposed Violation of Subordination Provisions

There is considerable litigation pending in state court between the Bank and the debtor's equity holders. The Bank argues that the plan is defective because it does not honor its alleged subordination rights against the debtor's equity interests.

The Bank of course has difficulty fitting this argument into an objection to the plan, as it must relate all arguments to defects under § 1129 of the Code. The only provision the upon which the Bank hangs its hat is § 1129(a)(3), which requires that a plan not be implemented by any means forbidden by law. However, that section is intended only to make sure the a reorganized debtor does not have an unfair advantage over other businesses by attempting to exempt itself from licensing requirements and other laws. 7 **Collier on Bankruptcy** (15th Ed.Rev.) ¶ 1129.03[3][b]. It has no applicability to rights of individual creditors, especially when those rights are mere allegations and not against the debtor. If and when the state court orders that the Bank is entitled to the distributions which would otherwise go to the equity holders under the plan, this court will honor that order. The Bank is entitled to nothing more.

The court gets the distinct impression that the Bank's objections to the plan are motivated more by the litigation with the equity holders than any real dislike of the terms of the plan. Be that as it may, the court finds the debtor's proposed language to the effect that confirmation will not prejudice any of the Bank's alleged subordination rights to be sufficient to address this issue. The proposed language shall either be included in an amended plan or incorporated into the order confirming the plan.

VI. Interest on Secured Claim

---

[2] In point of fact, the Bank has repeatedly argued to the court that reorganization is unfeasible. Having been presented with a plan which is sound and feasible, the Bank would have the court deny confirmation because it does not imprudently distribute all cash to prepetition creditors.

The Bank objects to the proposed interest rate of 5% per annum on its secured claim. While the court does not necessarily agree with the debtor's argument that it need not pay an interest rate sufficient to meet the requirements of § 1129(b)(2)(A)(i)(II),[3] it has no difficulty finding that with a one-year provision discussed in footnote 1 above the interest rate of 5% is sufficient. The court reaches this conclusion by noting the limited time and the fact that the debtor has consistently paid over to the Bank considerably higher amounts for each vehicle than the Bank could realize if it took possession of the vehicles and sold them itself. Moreover, five percent is in line with the current prime interest rate and the court sees no significant risk factors which require a higher rate, especially since the debtor will be "sitting" on several million dollars.

VII. Interest on Unsecured Claim

The court does not really follow the Bank's argument regarding the interest rate on its unsecured claim, since if the debtor were liquidated there is no way unsecured claims would be paid in full and since all creditors are to receive the same dividend and interest. The Bank seems to object because its claim, which is the subject of an objection, will not be paid until allowed. However, the plan provided that the Bank's dividend will be preserved and set aside until the objection is resolved. There is no requirement anywhere in the Code or Federal Rules of Bankruptcy Procedure that a claim be paid before it has been allowed. A plan which withholds distributions to objected claims is not discriminatory.

The Bank mentions the absolute priority rule pretty much as an afterthought. It does not cite *Bank of America v. 203 N. LaSalle*, 526 U.S. 434 (1999), with which it is surely familiar, so the court is not sure if it is objecting because no open bidding is provided as to the ownership of the reorganized debtor. There is no indication that anyone is interested in bidding more for an ownership interest in the reorganized debtor. In the absence of any such interest, and with the evidence showing that the reorganized debtor will not have any real value, the court finds that the equity owners of the debtor who will have an equity interest in the reorganized debtor will not receive that interest on account of their prepetition interest and therefore the plan

---

[3] The court is not certain that § 1129(b)(2)(A)(ii) applies to sales of depreciating collateral over time, but it might. Since the Bank does not raise this issue, and since the court finds the plan meets the requirements of § 1129(b)(2)(A)(i) and § 1129(b)(2)(A)(iii) as well, the court does not address the issue further.

4

meets the requirements of § 1129(b)(2)(B)(ii) of the Code.[4]

For the foregoing reasons, the debtor's plan of reorganization will be confirmed. All of the Bank's objections, whether or not specifically discussed here, will be overruled. This memorandum constitutes the court's findings and conclusions pursuant to FRBP 7052. Counsel for the debtor shall submit an appropriate form of order.[5]

Dated: September 24, 2008

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[4] Alternatively, the court finds that with 5% interest the plan meets the requirements of § 1129(B)(2)(B)(i) as to unsecured claims even if the interests of old equity in the reorganized debtor are deemed on account of their prepetition interests.

[5] The provisions regarding preservation of subordination rights and a September 30, 2009, deadline for liquidation of vehicles shall be included in the order unless incorporated into an amended plan. However, the court does *not* require the proposed provision speeding up the payments to the Bank. The debtor may include the provision, but the court does not require it.

5